WILLIAM B. SHURTLEFF, APPELLANT, V. OCCIDENTAL BUILD-ING & LOAN ASSOCIATION, APPELLEE.

FILED JANUARY 19, 1921.    No. 21113.

1. **Damages:** CONTRACT TO LEND MONEY: BREACH: MEASURE OF DAMAGES. The measure of damages for a breach of contract to lend money is usually the difference between the contract interest rate and the increased interest rate the borrower is obliged to pay in procuring a new loan. Where, however, the specific purpose for which the loan was made was communicated to the lender, and it appears that the borrower has suffered special damages by the breach, which are pleaded and proved, the damages recoverable are such as may fairly and reasonably be supposed to have been in the contemplation of both parties at the time of making the contract, as the probable result of a breach of it.

2. ———: ———: QUESTION FOR JURY. Whether certain claimed damages, not too remote and speculative, arising out of the increased cost of constructing a building, can be recovered in an action for damages for a breach of a contract to lend money to aid in its construction depends upon whether such damages were fairly and reasonably within the contemplation of the parties at the time of making the contract, as a probable consequence of a breach of it, and is a question of fact to be determined by the jury.

3. ———: ———: SPECULATIVE DAMAGES. Damages claimed for the loss of anticipated rents of a building during a period of delay in its construction, claimed to have been occasioned by a breach of contract to lend money for its construction, are, under the circumstances proved, too remote and speculative to be recoverable.

4. ———: ———: ATTORNEY'S FEES: COSTS. Under the circumstances proved, claimed damages for attorney fees and costs in perfecting the title in order to procure a loan are not recoverable.

APPEAL from the district court for Lancaster county: WILLIAM M. MORNING, JUDGE. *Reversed.*

*C. C. Flansburg,* for appellant.

*Max V. Beghtol* and *Gaines & Van Orsdel, contra.*

DAY, J.

This action was brought by William B. Shurtleff, in the district court for Lancaster county, against the Occidental Building & Loan Association to recover special damages claimed to have been sustained by him for an alleged breach of contract on the part of the defendant to lend the plaintiff $16,000.

The petition alleges in apt terms the making of the contract for the loan, the unwarranted breach thereof by the defendant, and the items going to make up his claim for special damages, which may be epitomized as damages arising out of the increased cost of the building; the loss of prospective rents; and the court costs and attorney fees incurred in perfecting his abstract to meet the requirements of the defendant, a more detailed statement of which will hereinafter appear.

At the close of the testimony, on motion of the defendant, the court directed the jury to return a verdict for the defendant, which was accordingly done, and judgment rendered thereon for the defendant. The plaintiff has appealed.

The only question presented by the appeal is whether the court erred in instructing a verdict for the defendant.

It was the theory of the trial court, as disclosed by its remarks in ruling on the defendant's motion for a directed verdict in its favor, that, conceding that the plaintiff had established the making of the contract for the loan, and conceding the unwarranted breach thereof by the defendant, still the plaintiff must fail for the reason that no damages such as the law recognizes for a breach of a contract to lend money had been shown. The trial court took the view that the measure of damages in such cases is the difference between the contract rate of interest and the rate the borrower would have been required to pay in procuring the money elsewhere; and, there being no

testimony that a greater rate of interest would have been required, that therefore no damages would lie. It was also the view of the trial court that the damages claimed were too remote and speculative to form the basis of recovery.

In passing upon the correctness of the ruling of the court, we must consider the testimony tending to support the plaintiff's theory of the case in its most favorable aspect. In support of the plaintiff's theory, the testimony tends to show that on October 5, 1916, the plaintiff made an application to the defendant for a loan of $25,000 upon an apartment house which the plaintiff contemplated building upon a lot then owned by him in the city of Lincoln, Nebraska. At the time of the application the plaintiff exhibited to the defendant the plans of the proposed building, which the defendant examined, figured the cost of the building, and informed the planitiff that his estimates were too high, but finally agreed to make a loan of $16,000 upon the premises, the money to be advanced from time to time as the building progressed toward completion. This proposition was accepted by the plaintiff, and in furtherance of the agreement on October 23, 1916, he signed a note for $16,000 payable to the defendant, and plaintiff and his wife duly executed a mortgage upon the premises to secure the payment of said note. The mortgage and note were delivered to the defendant and accepted by it, and the mortgage was duly filed for record the following day. The testimony also shows that plaintiff, relying upon his contract, commenced the erection of the building in November, 1916, in accordance with the plans exhibited to the defendant; that plaintiff submitted to the defendant an abstract of his title, to which objections were made, and, in order to satisfy the requirements of the defendant, plaintiff commenced two suits to clear the cloud upon his title, and in the end, about March 1, 1917, submitted an abstract which met all the requirements of the defendant; that meanwhile the plaintiff had proceeded with the construction of the building, and had expended thereon about $12,000; that he had

let contracts for the heating and the plumbing, and the building had progressed to the stage that it was ready for plastering; the roughing in on the contracts for heating and plumbing had been done, and the radiation delivered on the premises; that on several occasions the defendant had examined the building, and made no complaint or objections to the manner of its construction; that on March 5, 1917, the defendant again examined the building, and then, for the first time, informed the plaintiff that the building would not stand a loan of $16,000, and offered to make a new loan of $12,000, which the plaintiff refused; that thereupon the defendant returned to plaintiff the note, marked canceled, the mortgage, a release of the mortgage, and the abstract, and refused to carry out the contract for the loan; that the plaintiff made efforts to borrow the money elsewhere, and used due diligence in that behalf, but did not succeed in making a new loan until September or October, 1917, and then was able to borrow but $11, 000; that, by reason of the failure of the defendant to advance the money, the plaintiff was unable to meet the payments on the contracts for heating and plumbing, so that his contractors ceased work and refused to carry out their contracts, and the materials on the ground which were not in place in the building were removed by the contractors; that in completing the building in accordance with the plans, after procuring the money to do so, the plaintiff was obliged to pay for the plumbing the sum of $150 above the original contract price; that he was required to pay the sum of $250 above the original contract price for the heating, and, to even do this, reduced the amount of radiation called for in the original contract; that if the same amount of radiation had been put in as called for by the original contract, the increased cost would have been from $800 to $1,000 more; that there was a delay of several months in the completion of the building occasioned by the breach of the contract, and that by reason thereof the plaintiff lost prospective rents; that the gross rental was $375 a month, and that there was a great

demand for houses, and that the building could have been rented; that he paid out in costs and attorney fees in perfecting his title to meet the requirements of the defendant the sum of $150.

The measure of damages for a branch of a contract to lend money is usually, as announced by the trial court, the difference between the contract interest rate and the increased interest rate the borrower is obliged to pay in procuring a new loan. There are certain exceptions to this rule, one of which is that, where it appears that the specific purpose for which the loan was made was communicated to the lender at the time the contract was entered into, and where it further appears that the borrower has suffered special damages by the breach, which are pleaded and proved, the damages recoverable are such as may fairly and reasonably be supposed to have been in the contemplation of the parties at the time of making the contract, as the probable result of a breach of it. The leading case upon this general subject, and one frequently cited by the courts, is *Hadley v. Baxendale,* 9 Exch. (Eng.) *341, *354, in which it is said:

"Where two parties have made a contract, which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered, either arising naturally, that is, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated."

In 8 R. C. L. 464, sec. 31, it is said: "As a general rule the measure of damages for breach of an agreement to loan money is the difference, if any, between the interest that the borrower contracted to pay and what he was compelled to pay to procure the money; not exceeding, perhaps the highest rate allowed by law. * * * While the recovery is often limited to nominal damages, special damages may be recovered where the money is to be used for a particular purpose which is known at the time to the party agreeing to make the loan, provided, of course, that such damages are not speculative or remote." In *Murphy v. Hanna,* 37 N. Dak. 156, it is said: "The measure of damages for the breach of a contract obligation to loan money is not necessarily restricted to nominal damages, and where it appears that special circumstances were known by both parties, from which it must have been apparent that special damages would be suffered in case of failure to fulfil the obligation, such special damages as may appear to have been reasonably contemplated by the parties are recoverable." For cases supporting the general view see *Holt v. United Security Life Ins. & Trust Co.,* 76 N. J. Law, 585, 21 L. R. A. n. s. 691; *Levinski v. Middlesex Banking Co.,* 92 Fed. 449.

In the case before us it must be borne in mind that the plaintiff in contracting for the loan did so with the special purpose in view of constructing the building and paying for it in part at least, out of the money to be advanced on the loan from time to time as the building progressed, this fact was made known to the defendant at the time. That the plaintiff in carrying out the project might enter into contracts with contractors for various parts of the work would seem to be within the fair and reasonable contemplation of the parties at the time the contract for the loan was made, and that, if the contract were breached, the plaintiff might suffer damages. Whether such facts were reasonably within the contemplation of the parties, and whether it must have been reasonably contemplated that special damages would be suffered by a failure to carry

out the agreement, were questions which, under the evidence, in our opinion should have been submitted to the jury. As to whether the damages claimed were too remote and speculative to form the basis of recovery is for the court to determine.

As we view the record, the item of special damages arising out of the increased cost of the heating and plumbing, above the cost in the original contracts, are not too remote and speculative to form the basis of recovery. Here the plaintiff had made contracts for the performance of this work, presumably with parties who were able to fulfil their agreements. That the work was not completed was due to the plaintiff's inability to pay for it, which in turn was brought about by the defendant's default. Such damages appear to be the direct and immediate result of the breach of the contract.

As to the element of special damages arising from the loss of rents of the building for the period of delay in the completion thereof, occasioned as the plaintiff claims by a breach of the contract, we are of the view that such damages are too remote and speculative to form the basis of recovery. Too many independent circumstances followed the breach of the contract to say that the loss of rents was the direct and immediate result of such breach. So, with respect to the costs and attorney fees paid by the plaintiff to perfect his title to meet the requirements of the defendant, we are of the view that they are not proper elements of damage. The demands made by the defendant may have been somewhat technical, as claimed by the plaintiff, and yet in our view they are not beyond the reasonable requirements of a careful and prudent person engaged in loaning money. As before stated, the plaintiff procured a loan elsewhere. Had he not previously perfected his title, he would in all probability have been required to do so, paying therefor approximately the same amount.

In this discussion we have ommitted any reference to the argument of defendant's counsel, for the reason that it is based upon the theory of defendant of the evidence, and

overlooks in a large measure the plaintiff's testimony. But, inasmuch as there was a directed verdict for the defendant, it is incumbent upon us to consider the testimony as to the plaintiff's claims in its most favorable aspect.

From what has been said, it follows that the judgment of the trial court should be reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

FLANSBURG, J., not sitting.