330 P.2d 504

Fred HIGGINS and Helen Higgins, his wife, Appellants,

v.

ARIZONA SAVINGS AND LOAN ASSOCIATION, an Arizona corporation, Appellee.

No. 6526.

Supreme Court of Arizona.

Oct. 15, 1958.

Rehearing Denied Nov. 12, 1958.

Kenneth Biaett, Phoenix, for appellants.

Shimmel, Hill, Cavanagh & Kleindienst, and Rouland W. Hill, Phoenix, for appellee.

JOHNSON, Justice.

This is an appeal from a judgment entered in an action filed by appellants, Fred Higgins and wife, against the Arizona Savings and Loan Association, to recover damages for the breach of an alleged contract to lend the appellants money on the security of a mortgage. The ultimate question presented is: did the trial court properly direct a verdict in favor of appellee?

The appellants make a written application to the appellee, Arizona Savings and Loan Association, an Arizona corporation, hereinafter referred to as the Association, for a loan of $100,000 to be secured by a first mortgage on certain real estate owned by appellants, which loan was to refinance two first mortgages, one second mortgage, and pay a tax lien on said real property. The Association's head loan officer, Jerome J. Smrt, arranged for an appraisal to be made of appellants' real property, and later informed appellants that an appraisal had been made by a Mr. Archer, a qualified paid appraiser, and that he had filed a signed report, dated October 21, 1954, finding the reasonable value of the real estate of appellants to be the sum of $158,-250, and as the Association under the statute could only loan sixty per cent of the appraised value that the loan application of appellants was changed to the sum of $94,800.

Thereafter, appellants were advised that Mr. Smrt had taken a leave of absence and that Mr. Dick, Vice President from the Tucson office of the Association, would handle the loan application; arrangements were made for him to inspect the real estate and complete the application in the absence of the Association's regular loan officer. Mr. Dick, in the company of appellants, inspected the property and ascertained that the present values were as shown by Mr. Archer's appraisal, and advised appellants that he was approving the loan and that an escrow would be set up at the Phoenix Title and Trust Company. The title report showed certain requirements to be met by the appellants before the escrow could be completed and the money disbursed to him. Through the efforts of appellants all of the requirements of the title report were eventually met although it took some time because the property was subject to a federal tax lien which had to be cleared.

On March 21, 1955, a document of the Association entitled "Loan Settlement Statement" was signed by an official of the Association notifying the appellants that

their application for a loan had been granted in the sum of $94,800, and that after deducting the expenses incurred in making the loan the sum of $89,937.85 was available for escrow at the Phoenix Title and Trust Company, and that a check for that amount was deposited with the title company along with escrow instructions.

The Association on March 30, 1955 sent the appellants a "Loan Passbook" advising that their first monthly payment on the loan would be due on May 1, 1955, in the amount of $625.93.

Mr. Smrt testified that when appellants made application for a loan and the property was inspected he informed appellants that he would try to make the loan if the property across the street were cleared of trees, old shacks and a junk yard, and that appellants promised to have this done. That upon his return from his vacation he again inspected the property, and when he found that the objectionable debris had not been removed he went to the title company on May 19, 1955, and withdrew from escrow the check for $89,937.85, which had been deposited by the Association during his absence, and cancelled the escrow. The appellants were not formally notified that the escrow had been cancelled until August 25, 1955, when the Association wrote appellants that it was unable to approve and make the loan, stating as a reason the following:

"While the property offered as security is good property, certain surrounding circumstances, location, street conditions, and the ratio of the desired loan to reasonable marketable value, as determined by alternate appraisals make it impossible for our favorable consideration of this loan."

The appellants proved that as a result of the Association failing to make the loan upon which they had relied they lost their real property by foreclosure of two of the mortgages and sustained damages in an amount equal to their equity in the property.

The Association for the first time on February 25, 1957, one day before trial, interposed the defense that the Association was unable to obtain a report in writing of two appraisers giving the conservative market value of the real property of appellants in an amount sufficient to authorize the loan applied for by appellants.

At the conclusion of appellants' evidence the Association made a motion for a directed verdict, which was granted, upon the ground that the provisions of A.R.S. § 6-410 had not been complied with. That section provides that a building and loan association may make loans:

"1. Upon notes secured by first mortgages on improved real property, or on real property to be improved under contract with the association. Unless the federal housing adminis-

trator has insured or made a commitment to insure the property, the loan shall not exceed sixty percent of the conservative market value of the improved real property mortgaged, * *. *No loan shall be made except upon the report in writing of two appraisers giving the conservative market value of the property to be mortgaged."* (Emphasis supplied.)

From this order and from the judgment entered thereon and from the order denying a motion for a new trial this appeal is prosecuted.

■ We believe that the only question for this court to pass upon is whether, assuming that the Association did not fully comply with the provisions of A.R.S. § 6–410, the purported contract with appellant was illegal and incapable of enforcement, or was it a question of fact for the jury as to whether the Association, on the record presented, was estopped to deny its compliance with said section?

There is a definite distinction between an act of an association which is merely without authority and one which is illegal. The association may not be allowed to defeat an ultra vires contract because of failure to comply with certain formalities but an ultra vires contract which is beyond the power of association to make cannot be enforced; in other words, acts or contracts wholly beyond the corporate powers are void. 19 C.J.S. Corporations § 965.

In the instant case the Association had the power to enter into the contract with appellants to loan them money, and such contract was neither illegal nor against public policy, but was in fact the primary purpose of its organization. A.R.S. § 6–401.

Where the contract is within the scope of the charter of the association and the statutory law of the state, and the defect relied upon depends upon some extrinsic fact peculiarly within the knowledge of the officers and agents of the association, and the person dealing with the association is without notice of the nonperformance of any formality prescribed by statute as a condition precedent to the association's authority to act, such person will be entitled to assume that the formalities and all matters of internal management have been duly complied with. In such cases the association could, if the facts warranted, be estopped from showing that they could not enter into the contract by reason of a failure to comply with the prescribed conditions. 19 C.J.S. Corporations § 968; 13 Am.Jur., Corporations, § 758.

The evidence discloses that at all times until the letter of August 25, 1955, the officials of the Association led the appellants to believe that the contract would be carried out and the appellants in good faith, while relying upon the promises that the loan would be made, changed their position and as a result suffered damage.

Certainly the contract in question was within the scope of the power of the Association to make and the appellants, in good faith dealing with it, were under no obligation to examine the minutes and records of the Association (assuming the Association would permit it) to see if the provisions of A.R.S. § 6–410 had been complied with, but the appellants had a right to assume that the necessary steps would be taken by the officials to comply with all formalities required by statute, and under such circumstances the Association would be estopped to deny that it did contract in the manner provided by statute.

It appears to us that the ends of justice require that an association which has not followed the required formalities in the exercising of its powers should be estopped by its own acts from asserting, in defense of its assumed obligations, that they were ultra vires. To apply the principle of estoppel is not to enlarge the powers of the association; nor does it give warrant to the association to disregard or violate the restrictions which have been expressly imposed upon it.

The statement of this court in Leon v. Citizens' Building & Loan Ass'n, 14 Ariz. 294, 127 P. 721, 722, is particularly applicable to the facts in the instant case, wherein we said:

"* * * The principles of common honesty and fair dealing are appropriate alike to measure the conduct of individuals as well as corporations. The doctrine of ultra vires, when invoked, should not be allowed where it would not advance justice, but, on the contrary, would accomplish a legal wrong. * * *"

The trial court erred in directing a verdict in favor of the defendant since it appears there were sufficient facts under the record warranting submission of the matter to the jury.

Judgment reversed and new trial ordered.

UDALL, C. J., and WINDES, PHELPS and STRUCKMEYER, JJ., concur.