## MARTEL *v.* DUFFY-MOTT CORPORATION

1. SALES—IMPLIED WARRANTY—MERCHANTABILITY.

   Factors other than those concerned exclusively with the safety of a product may be important in determining the product's merchantability, and recovery may be allowed on the basis of breach of implied warranty of merchantability for damage other than personal injuries (MCLA, § 440.2314[2] [c]).

2. SAME — FOOD PRODUCT — MERCHANTABILITY — DELETERIOUS SUBSTANCE.

   Lack of evidence of any deleterious substance in a food product, applesauce, does not require the food product to be regarded as merchantable as a matter of law (MCLA, § 440.2314[2] [c]).

3. SAME—FOOD PRODUCT — APPLESAUCE — INEDIBILITY — BREACH OF WARRANTY—QUESTION OF FACT.

   Testimony by persons experienced in eating applesauce that certain applesauce tasted and smelled bad *held,* sufficient to justify a jury in concluding that the applesauce was inedible, and hence not fit for the ordinary purposes for which it is used (MCLA, § 440.2314[2][c]).

4. SAME — FOOD PRODUCT — APPLESAUCE — INEDIBILITY — BREACH OF WARRANTY—QUESTION OF FACT.

   Testimony that members of hospital staff, on the basis of their examination of applesauce eaten by two boys, decided to pump the boys' stomachs, together with testimony from which the jury could properly find that the applesauce was inedible, *held,* to present questions for the trier of fact of defendant manufacturer's breach of warranty of merchantable quality and of proximate causation of the boys' gagging and having their stomachs pumped (MCLA, § 440.2314[2] [c]).

---

REFERENCES FOR POINTS IN HEADNOTES

[1–6] 46 Am Jur, Sales § 341 *et seq.*
Construction and effect of UCC Art 2, dealing with sales. 17 ALR 3d 1010.

5. SAME—IMPLIED WARRANTY—BREACH—PROOF.

Biological or laboratory proof of the inedibility of a food substance is not a necessary part of a plaintiff's case against the manufacturer of the food for breach of implied warranty of merchantability; nonexpert testimony from which a jury would be justified in concluding that the food product was inedible may suffice (MCLA, § 440.2314[2] [c]).

6. SAME—IMPLIED WARRANTY—MERCHANTABLE QUALITY—BREACH— DAMAGES.

A plaintiff who can convince a jury that the food product he consumed was inedible and in consequence he no longer enjoys eating it, and can further convince the jury that his loss included loss of enjoyment of the food product, with a valuation in dollars, should be able to recover for the loss of an enjoyment (MCLA, § 440.2314[2] [c]).

Appeal from Common Pleas Court of Detroit, Rodgers (Julian P.), J. Submitted Division 1 February 10, 1967, at Detroit, (Docket Nos. 1,865 1,866.) Decided December 23, 1968.

Complaint by Gary Martel and Brian Martel, minors, by their next friend Edwina Martel, against Duffy-Mott Corporation, a Michigan corporation, for damages from consumption of unfit applesauce. Directed verdict and judgment for defendant. Plaintiffs appeal. Reversed and remanded for a new trial.

*Michael Kranson,* for plaintiffs.

*Harry H. Gemuend, Jr.,* for defendant.

LEVIN, P. J. The plaintiffs appeal a directed verdict granted at the conclusion of their proofs. The complaint charged the defendant, Duffy-Mott Corporation, with both negligence and breach of implied warranty of merchantability. On appeal the plain-

tiffs rely solely on the statutory implied warranty that to be merchantable goods must be fit for the ordinary purposes for which they are used. MCLA, § 440.2314(2)(c) (Stat Ann 1964 Rev § 19.2314[2] [c]).

Edwina Martel served her sons, Brian, 8, and Gary, 10, Mott's applesauce as part of their meal. Brian mixed his applesauce with the rest of his food and consumed a sizeable portion of the mixture. Gary ate the applesauce separately and after a spoonful or 2 reported to his mother that the applesauce tasted funny. She tasted and smelled the applesauce—at the trial she and Gary testified that it both tasted and smelled bad—and immediately telephoned the poison control center at Children's Hospital which, on the basis of her description of the applesauce, instructed her to take the children and remaining applesauce to the nearest hospital. When she arrived the applesauce was examined by hospital personnel who decided to and did pump the children's stomachs. Mrs. Martel was advised to watch the children carefully that night for certain symptoms. These symptoms did not appear and no other ill effects were suffered.

There was testimony the children were apprehensive on the way to the hospital although neither Mrs. Martel nor her sons knew of the imminent stomach pumping until after they reached the hospital. Mrs. Martel conceded the children may have gagged because of excitement or fright and not necessarily because of a deleterious substance in the applesauce. On the way to the hospital the boys said they were having a hard time breathing and asked to open the windows. Later they were chilled and asked that the windows be closed.

The boys testified that stomach pumping involves having a tube put through one's nose and swallowing it; the pumping then commences and is a very unpleasant experience. There was also testimony that, prior to this incident, applesauce was one of the favorites of the boys and was served 3 or 4 times a week, but; since the incident, they have refused to eat applesauce at all and even shy away from apples. When asked about their apprehensions, one of the boys stated, "I don't seem to trust it anymore" and the other said, "I don't want to get my stomach pumped again."

The trial judge ruled that the plaintiffs had failed to establish a *prima facie* case:

"The court must first find that there was sufficient testimony upon which reasonable minds might differ, that there is some testimony from which individuals might legitimately infer that the applesauce contained a *deleterious* matter; secondly, because of the deleterious matter the minors no longer like applesauce. This, in effect, as the court sees it, is basing an inference upon an inference, which is not sufficient to go to a jury." (Emphasis supplied.)

We reverse and remand for a new trial.

When Michigan adopted the uniform commercial code it enacted the following implied warranty of merchantability for transactions in goods:

"Goods to be merchantable must be at least such as * * * are fit for the ordinary purposes for which such goods are used." MCLA, § 440.2314(2) (c) (Stat Ann 1964 Rev § 19.2314[2][c]).

The language of this implied warranty parallels prior law. See CL 1948, § 440.15 (Stat Ann 1959 Rev § 19.255), and authorities hereafter cited.

The trial court erroneously assumed that food is necessarily "fit for the ordinary purposes" if it

is not deleterious. There was indeed no evidence that the applesauce contained any deleterious substance. However, it was not therefore to be regarded as merchantable as a matter of law.

The statements in some of the cases that the implied warranty insures that food is "free from foreign, poisonous or deleterious substances" (*Cheli v. Cudahy Bros. Co.* [1934], 267 Mich 690, 696; see, also, *Manzoni v. Detroit Coca-Cola Bottling Company* [1961], 363 Mich 235) were entirely appropriate on the facts of those cases. Still earlier statements can be found to the effect that there is an implied warranty of "wholesomeness in the sale of provisions for direct consumption" (*Sinclair v. Hathaway* [1885], 57 Mich 60, 61) and that they be "fit for food" (*Copas v. The Anglo-American Provision Company* [1889], 73 Mich 541, 548). Be that as it may, it is now settled in this and other jurisdictions, that factors other than those concerned exclusively with the safety of the product may be important in determining a product's merchantability and that recovery may be allowed on the basis of breach of implied warranty of merchantability for damage other than personal injuries. *Spence v. Three Rivers Builders & Masonry Supply* (1958), 353 Mich 120, 126; *Seely v. White Motor Company* (1965), 63 Cal 2d 9 (45 Cal Rptr 17, 403 P2d 145); *Santor v. A & M Karagheusian, Inc.* (1965), 44 NJ 52 (207 A2d 305); *Green Mountain Mushroom Co. v. Brown* (1953), 117 Vt 509 (95 A2d 679); *O. M. Franklin Serum Co. v. C. A. Hoover & Son* (Tex Sup, 1967), 418 SW2d 482.

In this case there was testimony, by persons well experienced in eating applesauce, that the applesauce tasted and smelled bad.[1] From such direct

---

[1] The fact that food is not fit to eat can be established by the plaintiff's testimony it tasted bad. See *Smith v. Gerrish* (1926), 256 Mass 183 (152 NE 318); *Barringer v. Ocean SS Co. of Savannah*

testimony the jury would have been justified in concluding that the applesauce did in fact taste and smell bad and was inedible. We also note that the hospital personnel, on the basis of their examination of the applesauce, decided to pump the boys' stomachs.[2] If the applesauce was inedible, it was not fit for the ordinary purposes for which it is used.

If the jury were to find that the applesauce was inedible, it could also properly conclude the applesauce so found to be inedible caused the boys to gag and to have their stomachs pumped, whether the precise cause of the gagging was excitement, fright or microbes and irrespective of whether the hospital attendants' decision to pump was well-advised or a mistake in judgment. We are not prepared to say that what is alleged to have occurred was not a proximate consequence of the experiences described. Whether the defendant's breach was a material element and a substantial factor in bringing about the alleged injuries is a question for the trier of fact. It is, of course, open to the defendant to suggest an alternative theory of causation.

Concern has been expressed that if recovery is allowed solely on the basis of a plaintiff's testimony that a manufacturer's food tasted bad or smelled bad, the "floodgates" will have been opened to countless spurious claims. When that occurs, if it does, they

---

(1922), 240 Mass 405 (134 NE 265); *Loya* v. *Fong* (Ariz App, 1965), 404 P2d 826.

Nonexpert opinion testimony is admissible where sensory perception is the subject matter of the testimony. 31 Am Jur 2d, Expert and Opinion Evidence, § 131, p 675; 30 Am Jur (Rev), Intoxicating Liquors, § 354, p 736.

[2] Testimony concerning the statements made at the time by hospital personnel were ruled inadmissible. There was no evidence as to a laboratory test of the applesauce. None appears to have been made at the hospital (see footnote 3 and accompanying text). The jar of applesauce was exchanged by Mrs. Martel for 4 large jars offered by defendant's representative.

can be closed. In the meantime, there is no good reason why in the food area we should so limit the implied warranty that food is merchantable even if inedible as long as not deleterious, when as to every other commodity we apply the "fit for the ordinary purpose for which used" test without a showing that the lack of fitness represents a peril of physical harm.

Nor does any reason appear why biological or laboratory proof should be required as part of plaintiff's case.[3] Accused persons have been convicted and sentenced to serve long terms on one eyewitness's identification testimony even though the witness's view may have been fleeting, the witness was excited at the time of the incident, or there were other doubt engendering circumstances. A witness may make a mistake in identifying a person because of bad eyesight, ineptitude or preconceived notions —he may lie. In a case such as this one, a witness may mistakenly identify a food substance because he has an uneducated palate, or at the time is subject to some systematical disturbance—he too may lie.

It is the business of juries to determine the credibility of witnesses, to sift out the conflicting claims and to decide the disputed issues. If they go too far afield, it is the trial judge's and our responsibil-

---

[3] "Whatever the weight of the foregoing may be, we feel compelled to point out that positive direct evidence resulting from an analysis of the alleged contaminated food is not a *sine qua non* to the establishment of a prima facie case of alleged poisoned or contaminated food. To so require is to place an unfair burden upon a plaintiff in this kind of case. There are circumstances attending the sale of allegedly poisoned or contaminated food in which a complaining plaintiff cannot obtain a scientific analysis of the involved product. Such plaintiff should not be totally without a basis of making out a submissible fact question." *Savage* v. *Peterson Distributing Company, Inc.* (1967), 379 Mich 197, 200, 201.

Compare *Pattinson* v. *Coca-Cola Bottling Company of Port Huron* (1952), 333 Mich 253, 263.

ity to correct error. We should not deny recovery of just claims because of fear we cannot recognize and exclude the malingerer.

· We have also concluded that, if upon the new trial we have ordered, the jury finds the applesauce unfit for consumption, this is a "proper case" under MCLA, §§ 440.2714(3), .2715(2)(b) (Stat Ann 1964 Rev §§ 19.2714[3], .2715[2][b]) for allowance of "consequential damages," including "injury to person or property."

It is a close question whether the plaintiffs should be permitted to recover as part of their consequential damages for past and future loss of enjoyment of applesauce. Applesauce is but one of a large variety of desserts, most of which other desserts can, no doubt, we take judicial notice, fill the gastronomical void created when plaintiffs lost their taste for applesauce. Plaintiffs do not claim permanent injury or loss of taste or appetite in general, or loss of ability to consume or enjoy a basic nutriment or variety of food substances. We could well draw a line—no recovery for loss of enjoyment of applesauce and put a label on it: the claimed damages are "remote", "uncertain", "conjectural", *etc.* But we decline to do so.

More and more of the food sold to the public comes in cans, frozen, prepared, and even precooked ready to eat. Whole meals can be bought all prepared, ready or almost ready to go on the table. We do not think it a sensible use of the time of the profession or of the bench to construct a body of law as to which foods are of such importance that loss of enjoyment is compensable and those which, as a matter of law, are not of that rank. We think it sounder to permit a plaintiff who can convince a jury that the food product he consumed was inedible and in consequence he no longer enjoys eating it,

to recover damages, including damages for loss of enjoyment, if he can additionally convince the jury that a true loss was suffered and that it should add a dollar amount therefor. In some cases loss of enjoyment may be real and substantial, an injury not to be made light of.

We see no need to create rules of law in a narrow area that the good sense of the average jury can handle with greater dispatch and probably sounder results. If a recovery seems disproportionate, the corrective remedies for excessive verdicts are available.

Reversed. Remanded for a new trial. Costs to appellants.

R. B. Burns and McGregor, JJ., concurred.