685 P.2d 744

**Edward E. DIETZ and Sharri A. Dietz, his wife, Third Party Plaintiffs-Appellants and Cross-Appellees,**

**v.**

**David WALLER, dba Desert Sports Center and David Waller, Third Party Defendants-Appellees and Cross-Appellants.**

**Phillip MOULDER II, Plaintiff-Appellant and Cross-Appellee,**

**v.**

**David WALLER, dba Desert Sports Center, Defendant-Appellee and Cross-Appellant.**

No. 17037–PR.

Supreme Court of Arizona, En Banc.

July 13, 1984.

Helm & Kyle by Margaret R. Tinsley, Tempe, Marton, Halladay & Hall by Michael S. Halladay, II, Phoenix, for third party plaintiffs-appellants/cross-appellees.

Tupper, Schlosser, Schultz by Reed P. Schulz, Phoenix, for third party defendants-appellees/cross-appellants.

HOLOHAN, Chief Justice.

Plaintiff-appellants brought an action in the Superior Court of Maricopa County against defendant-appellee Waller and defendant Centurion Boats, Inc. on the theories of strict liability, express warranty, implied warranty of merchantability, misrepresentation, fraud, and consumer fraud. At trial, Centurion entered into a stipulation with the plaintiffs and was thereupon granted a directed verdict. At the close of the plaintiff's case, the court also granted a directed verdict for Waller on all claims. The plaintiffs appealed.

The Court of Appeals affirmed the judgment of the trial court in a memorandum decision, *Dietz v. Waller*, 1 CA–CIV 6492 (filed June 7, 1982). Appellants sought and were granted review by this court. We have jurisdiction pursuant to A.R.S. § 12–120.24 and 17A A.R.S. Rules of Civil Appellate Procedure, Rule 23.

The issue to be determined is whether there was sufficient evidence presented at trial to justify submitting the case to the jury on the theories of strict (product) lia-

bility and implied warranty of merchantability. Appellants do not contest the directed verdict on the theories of misrepresentation and fraud.

The essential facts, stated in the light most favorable to appellants as required in considering a directed verdict, are as follows. Additional facts will be presented as are necessary for clarity in the discussion of the issues.

On May 2, 1978 appellants Edward Dietz and Phillip Moulder purchased a supposedly new Centurion T-5000 "jet" boat from Desert Sports Center, owned by appellee David Waller. Dietz and Moulder immediately experienced a variety of problems with the boat. An initial electrical wiring problem was resolved so that appellants could start the boat. When the boat was then picked up from Desert Sports Center and placed in the water, it leaked so badly it had to be removed, drained, and returned to Waller. After repair, the boat continued to leak and was returned to Waller's shop five more times. The only evidence presented as to the nature of the repairs made was that they involved some resealing around the transom adapter. Waller never explained the source of the leak. Ultimately, "J-drains" were installed by another shop at Waller's suggestion. These devices did not eliminate the leaking but did drain the water out of the boat. The installation of the "J-drains" had no effect on the structural integrity of the hull.

In addition, the boat developed an engine knock in late May, causing appellants to have Waller repair the engine. Moulder, an experienced boatman, testified that the engine appeared to have been run prior to sale. Dietz testified that Waller had said at the time of the repair that the boat's engine was from another boat which had been run once before. Waller also had said at one point that the boat's seats, which had cracked, were used seats and not the original ones installed in the boat by the manufacturer. Dietz also testified that, upon inspecting the boat after retrieving it from the lake after it "disintegrated," he discovered that the seats had been redrilled and remounted.

Evidence was presented that the boat had been involved in an earlier accident while being trailer-towed by Moulder, but there was testimony that the damage had been minor. Waller had inspected the boat after the accident, and he had not seen any damage which would be dangerous to the boat.

On July 4, 1978, appellants took the boat, which up to that date had been operated less than ten hours, to Lake Pleasant. The lake was calm with no wind, and only a few other boats were in the water. After running the boat for a short while, Dietz, also an experienced boatman, accelerated the boat until it planed out at about 45–50 m.p.h. After going about 100 yards, Dietz testified, "the left pickle fork blew off" and the boat broke apart, with the forward half of the boat essentially breaking off from the back half. Dietz testified that he had seen no large boat wake or debris in the water prior to this occurrence and that he did not know why the boat broke apart. Dietz sustained personal injuries in the accident which required medical attention and resulted in his missing one week's work.

◼ "A directed verdict admits the truth of all the evidence of the party opposing the motion including all reasonable inferences that could be drawn from the evidence." *Rocky Mountain Fire and Casualty Co. v. Biddulph Oldsmobile*, 131 Ariz. 289, 291–292, 640 P.2d 851, 853–854 (1982) (strict liability), *citing Byrns v. Riddell, Inc.*, 113 Ariz. 264, 550 P.2d 1065 (1976). A directed verdict is unwarranted so long as reasonable minds can differ as to the conclusions to be drawn from the evidence. *Chambers v. Western Arizona CATV*, 130 Ariz. 605, 638 P.2d 219 (1981); *Bailey v. Montgomery Ward and Co.*, 6 Ariz.App. 213, 431 P.2d 108 (1967) (early strict liability case).

The Court of Appeals agreed with the trial court that, viewed in the light most favorable to appellants, the evidence, or any inferences therefrom, failed to show that the boat was in a defective and unrea-

sonably dangerous condition when it was sold to appellants. It concluded that "[t]he combined effect of the stipulation 'exonerating' Centurion and the absence of any evidence that Waller modified or altered the boat prior to sale, sinks appellants' case."

■ We believe that the lower courts misapplied the law regarding the elements of strict liability and breach of implied warranty. We initially note the requirements of proof for strict liability:

"[t]o establish a prima facie case of strict liability, the burden is upon the plaintiff to show the following: the product is defective and unreasonably dangerous; *the defective condition existed at the time it left defendant's control;* and the defective condition is the proximate cause of the plaintiff's injuries and property loss." *Rocky Mountain Fire and Casualty Co., supra,* [131 Ariz.] at 292, 640 P.2d at 854 (emphasis added) (citation omitted).

After the first day of trial, Dietz and Moulder entered into a stipulation with Centurion that stated in pertinent part:

1. When the boat left Centurion's manufacturing plant, it complied with all Coast Guard regulations and specifications *and was not defective;* and

2. Centurion would be dismissed from the case.

(Emphasis added). In accord with the stipulation, the trial court entered a directed verdict in favor of the manufacturer. This directed verdict is not being appealed here.

■ The stipulation does not by itself entitle Waller to a directed verdict, however, because the seller is also responsible if a defect arises after his receipt of the product while it remains in his control. We disagree with the lower courts' determination that there was an absence of any evidence that Waller modified or altered the boat prior to sale. While there was no direct evidence of Waller causing a defect, there was circumstantial evidence from

which it could be inferred that the boat was defective at the time it was sold to appellants. (Strictly speaking, the issue is whether the defect existed at point of sale, not whether Waller caused the defect.)[1] As appellants correctly note, the essence of strict liability is its applicability to situations where plaintiff is precluded by circumstances from pursuing a negligence claim because he or she cannot show defendant *caused* a specific defect while in control of the product. Plaintiff thus, for policy reasons, is allowed to prevail with evidence that some defect *existed* when the product passed from defendant's control to plaintiff.

■ Plaintiffs, we have held, must be permitted to rely upon circumstantial evidence alone in strict liability cases, because it is unrealistic to expect them to otherwise be able to prove that a particular product was sold in a defective condition. *Reader v. General Motors Corp.,* 107 Ariz. 149, 483 P.2d 1388 (1971). "A requirement of direct evidence would effectively deny the theory of recovery of [strict liability]...." *Reader, supra,* at 155, 483 P.2d at 1394. This would be especially true in cases such as this one where the product has disintegrated or burned up. *See Rocky Mountain Fire and Casualty Co., supra.*

■ We think reasonable minds could differ over the conclusions to be drawn from the evidence presented by appellants. While no single item of evidence is conclusive, there are several items that point to changes being made in the boat by Waller. The boat was shown to leak substantially from the moment it was placed in the water, and the leak(s) could not be stopped. While there was no direct evidence that the leak(s) actually caused the disintegration of the boat, we think it could be reasonably inferred that they were an indication of a structural problem. Moreover, no specific defect need be shown if the evidence, direct or circumstantial, permits the inference

---

1. Indeed, the rule of strict tort liability is applicable even though seller has exercised all possible care in preparation and sale of his product.

*O.S. Stapley Co. v. Miller,* 103 Ariz. 556, 447 P.2d 248 (1968); Restatement 2d *Torts* § 402A(2)(a) (1965).

that the accident was caused by a defect. *Franks v. National Dairy Products Corp.*, 414 F.2d 682 (5th Cir.1969); *Hale v. Advance Abrasives Co.*, 520 S.W.2d 656 (Mo.App.1975); *Moraca v. Ford Motor Co.*, 66 N.J. 454, 332 A.2d 599 (1975); *Pearson v. Franklin Laboratories, Inc.*, 254 N.W.2d 133 (S.D.1977). The stipulation that the boat was free of defects at the time of manufacture, in conjunction with the existence of the leak, the installation of used seats, the engine's appearance of previous use, and the electrical and engine problems, could lead a reasonable jury to infer that Waller or someone else had mishandled or tampered with the boat prior to sale, or had negligently modified it. This inference, when combined with the evidence that the boat had seen only approximately ten hours of use and was being properly operated by an experienced boatman on a clear, calm day, could lead the jury to conclude the boat's sinking was due to a defect in the boat that existed at time of sale.

 Admittedly, there was sharp dispute over the material facts and the inferences to be drawn therefrom. In addition to the stipulation, evidence was presented from which to infer that the defect might not have existed at time of sale—namely the boat's accident while being trailer-towed by appellants, and Waller's assertion that, prior to sale, he only waxed the boat, put it on the showroom floor, and installed the flip-throttle to match the length of his customer's legs. Nevertheless, considering all the facts and circumstances, there was a reasonable likelihood that reasonable people might reach different conclusions from the competing inferences. To prove a product defective, a plaintiff is not required to eliminate with certainty all other possible causes of an accident, but rather to present evidence sufficient to allow the trier of facts to reasonably infer that it was more probable than not that the product was defective. *Daleiden v. Carborundum Co.*, 438 F.2d 1017 (8th Cir.1971); *Schmidt v. Plains Electric, Inc.*, 281 N.W.2d 794 (N.D. 1979); 63 Am.Jur.2d *Products Liability* § 224 (1984). Thus it was for the jury to decide the truth of the matter. *Reader, supra.*

While this is a closer case than *Rocky Mountain,* where there was evidence that the problem with the motor home which required pre-sale electrical repair was causally related to the fire that destroyed the vehicle, other strict liability cases have reached a decision similar to ours when there was no evidence as to the existence of a defect prior to sale. *See, e.g., Bailey v. Montgomery Ward and Co., supra* (inferring existence of defect from new pogo stick flying apart); *Franks v. National Dairy Products Corp., supra* (defect in shortening inferrable from unexplained explosion during proper use without defect being specifically identifiable); *Lindsay v. McDonnell Douglas Aircraft Corp.*, 460 F.2d 631 (8th Cir.1972) (fire and crash of aircraft lost at sea did not require proof of specific defect or negating of possible pilot error); *Firestone Tire & Rubber Co. v. King*, 145 Ga.App. 840, 244 S.E.2d 905 (1978) (plaintiff need not prove negligent manufacturing nor specify nature of alleged defect in blown out tire); *Cornell Drilling Co. v. Ford Motor Co.*, 241 Pa.Super. 129, 359 A.2d 822 (1976) (new truck unexplainedly catching fire was circumstantial evidence from which to infer defective condition in spite of lack of evidence of any specific defect); *Rennick v. Fruehauf Corp.*, 82 Wis.2d 793, 264 N.W.2d 264 (1978) (defect may be shown by a *res ipsa* type of inference). *See also* W. Prosser, *Handbook of the Law of Torts* § 103, pp. 672–73 (4th ed.1971) (mere fact of accident added to facts such as occurrence within short time of sale, elimination of other likely causes, or indication that defect existed before the accident may make out sufficient case via *res ipsa* type of inference).

 As to the second claim of breach of implied warranty of merchantability, A.R.S. § 44–2331(A) (repealed and renumbered as A.R.S. § 47–2314(A) by Sec. 2 & 3, Ch. 77, 2d Reg.Sess., 36 Legis., *see* 5 Ariz. Leg.Serv. 243 (1984)) states "a warranty that the goods shall be merchantable is

implied in a contract for their sale if the seller is a merchant with respect to goods of that kind...." Thus, goods must "pass without objection in the trade...." and be "fit for the ordinary purposes for which such goods are used...." A.R.S. § 44–2331(B)(1) and –2331(B)(3). Our statute is identical with the Uniform Commercial Code § 2–314 and, as it is imposed by operation of law for the benefit of buyers, it should be liberally construed to protect them. W. Kimble and R. Lesher, *Products Liability* § 93 (1979); *Woodruff v. Clark County Farm Bureau Coop. Ass'n.*, 153 Ind.App. 31, 286 N.E.2d 188 (1972); *see also* A.R.S. § 44–2202. The issue of breach of implied warranty here depends on virtually the same elements as the strict liability claim, namely the existence of a defect at the time of sale and the defect causing damages during ordinary use.[2] Indeed the statute has been termed "in essence an action based on strict liability in tort (citation omitted)." *Flory v. Silvercrest Industries, Inc.*, 129 Ariz. 574, 579, 633 P.2d 383, 388 (1981); *see also* J. White and R. Summers, *Uniform Commercial Code* § 9.6, 286, § 9.8, 295 (1972). Therefore, this claim should have been given to the jury for the reasons previously stated in the discussion of strict liability. *See Rocky Mountain Fire and Casualty Co.*, *supra*, 131 Ariz. at 294, 640 P.2d at 856.[3]

██ Appellants finally complain that they should have been allowed to present their case to the jury on the theory of negligence in repair. Appellee asserts that no negligence in repair claim had been raised as an issue, that no motion had been made to amend the pleadings to allege such theory, and that there were "absolutely no facts presented to the trial court that would in any way indicate that [appellee] was negligent in repairing the boat." The

Court of Appeals agreed and held that "[b]ecause negligence was not a part of this case at trial, it cannot be raised on appeal."

Rule 15(b), Rules of Civil Procedure, 16 A.R.S., permits theories of liability to be treated as if raised in the actual pleadings if they are tried by express or implied consent of the parties. *Electrical Advertising, Inc. v. Sakato*, 94 Ariz. 68, 381 P.2d 755 (1963). *See also Starkovich v. Noye*, 111 Ariz. 347, 349, 529 P.2d 698, 700 (1974). In the present case, however, no conceivable notice was given to defendant during pre-trial or trial proceedings that defendant's negligence was being put at issue, thus no implied consent could have been given. For example, terms such as "duty of care," "carelessness," and "negligence" were noticeably absent from the trial record and the subsequent in-chambers hearings on directing a verdict. While the issue was conceivably inferrable from the evidence, it would be manifestly unfair to expect defendant to have been put on notice of a negligence claim from appellants' conduct. The denial of this claim was not error.

The decision of the Court of Appeals is vacated and the judgment of the Superior Court is reversed. The action is remanded to the Superior Court for further proceedings on the issues of strict liability and implied warranty of merchantibility.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.

---

**2.** We do not address the question of whether privity exists between the appellants and the appellee as it was not argued by appellee.

**3.** *See also, e.g., Martel v. Duffy-Mott Corp.*, 15 Mich.App. 67, 166 N.W.2d 541 (1968) (children who ate applesauce with "funny taste" and sub-

sequently had to have stomachs pumped could recover under theory of implied warranty of merchantability despite no evidence that applesauce contained any deleterious substance; thus directed verdict was improperly granted). *Cf. Bailey v. Montgomery Ward and Co., supra.*