806 P.2d 904

William Edward MINEER and Cheri Mineer, husband and wife, Lonnie Sowell and Durline Phillips, Plaintiffs/Appellees/Cross–Appellants,

v.

ATLAS TIRE COMPANY, a corporation, Defendant/Cross–Appellee,

Chevron U.S.A., a corporation, Keeler's Chevron, Inc., a corporation, Firestone Tire and Rubber Company, a corporation, Defendants/Appellants.

2 CA–CV 89–0192.

Court of Appeals of Arizona, Division 2, Department A.

Oct. 16, 1990.

As Corrected Oct. 18, 1990.

Review Denied March 19, 1991.

**316**

Goldberg & Osborne by John E. Osborne, Tucson, for plaintiffs/appellees/cross-appellants.

Fennemore Craig by Timothy Berg, Graeme Hancock and Keith L. Hendricks, Phoenix, for defendant/appellant Firestone Tire and Rubber Co. and defendant/cross-appellee Atlas Tire Co.

Teilborg, Sanders & Parks by Bradley R. Jardine and Rick N. Bryson, Phoenix, for defendant/appellant Keeler's Chevron, Inc.

Rutan & Tucker by Marshall M. Pearlman, Philip M. Prince, and Matthew K. Ross, Costa Mesa, Cal., for defendant/appellant Chevron U.S.A.

## OPINION

LIVERMORE, Presiding Judge.

Plaintiff William Mineer was seriously injured when, while inflating a brand new tire after mounting it, the tire blew over the rim. The cause of the accident was a defect in the metal wire imbedded in the tire designed to provide a seal between the tire and the rim. In a strict liability products case, the sole issue tried was whether this defect existed when the tire was acquired at retail or whether it was due to the way in which Mineer mounted the tire. The jury returned a plaintiffs' verdict against defendants Keeler's Chevron, the station at which the tire was purchased, Chevron U.S.A., the distributor, and Firestone Tire & Rubber Company, the manufacturer. Numerous issues are raised on appeal and cross-appeal. We affirm in part and reverse in part.

Some of the defendants argue that the evidence does not support the jury's finding that the tire was defective when purchased. The testimony of Mineer and the person assisting him that they had correctly mounted the tires, coupled with an expert's opinion that the defect could not have been caused by proper or improper mounting of the tires, is sufficient to establish a defect at the time of purchase.

Chevron and Firestone argue that plaintiffs did not establish a defect at the time the tire left their possession as required by *Dietz v. Waller*, 141 Ariz. 107, 685 P.2d 744 (1984). To this we believe there are two answers. First, a jury might properly infer, as this one on proper instructions apparently did, that a defect in a brand new product was attributable to the manufacturer. That is especially so here where the testimony of the service station

owner and of an employee of Chevron made it improbable that those companies caused the defect. See *Coulter v. Michelin Tire Corp.*, 622 S.W.2d 421 (Mo.App. 1981); *Lewis v. United States Rubber Co.*, 414 Pa. 626, 202 A.2d 20 (1964).

■ Second, we believe the proper rule is that when a plaintiff establishes that he purchased a defective product that has gone through several hands before purchase, the burden shifts to the defendants to negate their responsibility. This was clearly expressed in *Prutch v. Ford Motor Co.*, 618 P.2d 657, 660 (Colo.1980) where the court required plaintiff to establish that the product was defective when it left the manufacturer:

> In our view, this burden of proof—when applied to a transaction between a typical consumer and a franchised dealer for a remote manufacturer—reflects unrealistic expectations. Unlike conditions in less complex times, today's typical consumer has no means of discovering whether the product of a remote manufacturer was defective when it left the factory, or at what point in the multi-step manufacturing-delivery process the defect was introduced. At best the ordinary buyer is able to become aware only after delivery to the buyer that the product is defective. *See generally Morrow v. New Moon Homes, Inc.*, 548 P.2d 279, 289 (Alaska 1976); *Henningsen v. Bloomfield Motors, Inc.*, 32 N.J. 358, 161 A.2d 69 (1960); *Kassab v. Central Soya*, 432 Pa. 217, 246 A.2d 848, 853 (1968).
>
> To impose an impossible or unreasonably onerous burden of proof is to deny many consumers a meaningful remedy. Thus, a plaintiff's burden should be no more than to establish that the defect arose in the course of manufacturer-distribution and before the plaintiff purchased the item. A plaintiff who claims breach of warranty, therefore, should be able to satisfy the burden of proof by evidence that at the time of purchase or acquisition the product was flawed in a manner constituting a breach of warranty, and damages resulted. See 2 Frumer and Friedman, *Products Liability*, § 16A(4)(e)(iii) at 117.

Manufacturers, distributors, and sellers in the chain usually have greater access to information identifying a defect's source than does the buyer. Moreover, they are in a position to protect themselves against losses from conduct of another in the chain, as by "hold harmless" and indemnity agreements or other contractual arrangements. Injustice would result from denying a claim for relief for breach of warranty when one of several defendants clearly was responsible for the defect giving rise to the breach, but the plaintiff cannot prove which one. Procedural rules governing burden of proof and burden of going forward with the evidence are intended to facilitate the truth-seeking process of trial, and thus to facilitate justice. Requiring each defendant in the chain of distribution to show that the product was not defective when it left its control imposes no unreasonable burden on defendants. Such a procedure simply redistributes the burden to those who have superior knowledge of the truth and better access to evidence.

We conclude that the plaintiffs' burden is limited to showing that a defect existed at the time the farm implement in question first came into the plaintiffs' possession. The evidence was more than adequate to satisfy that burden.

This holding was applied to a case presented on a theory of strict liability in tort in *Blueflame Gas, Inc. v. Van Hoose*, 679 P.2d 579 (Colo.1984). See generally *Nichols v. Nold*, 174 Kan. 613, 258 P.2d 317 (1953); *Snider v. Bob Thibodeau Ford, Inc.*, 42 Mich.App. 708, 202 N.W.2d 727 (1972); *Anderson v. Somberg*, 67 N.J. 291, 338 A.2d 1 (1975). On the facts of this case, plaintiffs also carried the burden. Defendants chose not to litigate among themselves as to who caused the defect. They cannot now complain.[1]

---

1. This defeats the defendants' claim that the jury's answer to a special interrogatory, submitted after the general verdict, that it did not determine who caused the defect is inconsistent with the verdict. Not having been asked, and therefore not having to determine responsibility

Plaintiff initially filed suit against Atlas Tire Company as manufacturer of the tire because the tire was so labelled. After the statute of limitations had run but before the expiration of the abatement period, plaintiffs substituted Firestone for a fictional defendant named in the complaint as provided by Rule 10(f), Ariz.R.Civ.P., 16 A.R.S. Firestone's contention that this was improper is fully answered by *Ritchie v. Grand Canyon Scenic Rides*, 165 Ariz. 460, 799 P.2d 801 (Aug. 30, 1990).

Finally, plaintiffs cross-appeal from the dismissal of Atlas Tire Company, contending that the supervening case of *Torres v. Goodyear Tire & Rubber Co.*, 163 Ariz. 88, 786 P.2d 939 (1990) mandates a finding of liability. We reverse the order of dismissal and remand for reconsideration in light of that opinion. Further discovery may be allowed in the court's discretion.

Save as to the issue on cross-appeal, the judgment is affirmed.

HATHAWAY, J., concurs.

FERNANDEZ, Judge, specially concurring.

I concur in the holding that plaintiffs presented sufficient evidence from which the jury might properly infer that the defect was attributable to the manufacturer. Because of that, the second reason given by the majority on the shifting of the burden of proof is not necessary, especially since the jury in this case was not so instructed.

among the defendants, the jury did not need to determine that issue. Having presented an all or nothing joint defense, defendants could not

by interrogatories after the verdict resurrect claims against one another.