394 P.3d 32

Maricruz ZULUAGA, a minor, BY AND THROUGH her next friend, Guadalupe ZULUAGA, Plaintiff/Appellant,

v.

BASHAS', INC., an Arizona corporation doing business as Food City, Defendant/Appellee.

No. 2 CA-CV 2016-0104

Court of Appeals of Arizona, Division 2.

Filed February 3, 2017

Hollingsworth Kelly, Tucson, By Louis Hollingsworth, Michael F. Kelly, and John F. Kelly, Counsel for Plaintiff/Appellant

Burch & Cracchiolo, P.A., Phoenix, By Daryl Manhart and Susie Ingold, Counsel for Defendant/Appellee

Judge Vásquez authored the opinion of the Court, in which Presiding Judge Howard and Judge Staring concurred.

## OPINION

VÁSQUEZ, Judge:

¶ 1 In this negligence action, Maricruz Zuluaga appeals from the trial court's judgment in favor of Bashas', Inc. and the denial of her motion for a new jury trial. On appeal, Zuluaga argues the court erred by unreasonably limiting the scope of voir dire. Zuluaga also contends the court erred by giving a curative

instruction after plaintiff's counsel referred during opening statements to the manner and timing of Bashas' disclosure of certain information. For the following reasons, we affirm the court's judgment.

### Factual and Procedural Background

¶ 2 "We view the evidence and all reasonable inferences in the light most favorable to upholding the jury's verdict." *Romero v. Sw. Ambulance*, 211 Ariz. 200, ¶ 2, 119 P.3d 467, 469 (App. 2005). On June 2, 2011, six-year-old Zuluaga and her parents were shopping at a Food City location, operated by Bashas'. While in the store, Zuluaga briefly separated from her mother and went to the produce department. At the same time, a Food City employee, Carlos Martinez, passed through the produce department on his way to the back of the store. The two collided, and Zuluaga fell and sustained a skull fracture and subdural hemorrhage.

¶ 3 Zuluaga's mother brought this action on her behalf in July 2012, claiming Zuluaga suffered damages because of Martinez's negligence, for which Bashas' was vicariously liable. During the seven-day trial, the parties disputed whether Martinez had been running or walking through the produce department and whether he ran into Zuluaga or she ran into him. The jury returned a defense verdict in favor of Bashas'. The trial court denied Zuluaga's motion for a new trial, and this appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) and 12–2101(A)(1), (5)(a).

### Scope of Voir Dire

¶ 4 Zuluaga argues the trial court "unreasonably limited her voir dire by refusing to allow questions about grocery store employment." We will not overturn a trial

court's ruling on the scope of voir dire absent an abuse of discretion. *State v. Burns*, 237 Ariz. 1, ¶ 19, 344 P.3d 303, 314 (2015).[1] In addition, we will not reverse a judgment unless the error was prejudicial. *See* Ariz. Const. art. VI, § 27; *United Cal. Bank v. Prudential Ins. Co. of Am.*, 140 Ariz. 238, 295, 681 P.2d 390, 447 (App. 1983).

¶ 5 The trial court conducted the initial portion of voir dire in this case, asking prospective jurors if they, a close family member, or a close friend "work[ed] for Bashas or Food City." One juror responded affirmatively and was later dismissed for cause. During Zuluaga's portion of voir dire, counsel asked a similar, but broader, question: "Who here, or a family member, or a close friend, has ever worked in a grocery store? This could be 30 years ago, checkout clerk; cashier manager; surveillance." Five jurors responded affirmatively, and the first four briefly explained their connections. The court stopped Zuluaga's counsel before he could address the fifth juror, however, and the following exchange occurred:

> The Court: You're getting to some areas here that are so long and I don't know how helpful it is. I'm surprised you haven't asked who hasn't worked at a grocery store because that's such a common way of kids to advance to adults. It doesn't really matter whether somebody has worked at a grocery store or has a good friend that has.
>
> You can ask for similar specific areas, but I'm going to ask you to be more explicit asking the questions and move things along.
>
> [Zuluaga's counsel]: Your Honor, thank you.
>
> For the record, this case involves the actions of a grocery store with [an] em-

---

1. Because the pertinent rule of civil procedure uses language that is substantially similar to that found in the corresponding criminal rule, we rely in part on cases reviewing the scope of voir dire in the criminal context. *Compare* Ariz. R. Civ. P. 47(b)(3) (court "shall permit that party a reasonable time to conduct a further oral examination of the prospective jurors" and "may impose reasonable limitations with respect to questions allowed during a party's examination of the prospective jurors"), (d) (questioning "may extend to any legitimate inquiry which might disclose a

basis for exercise of a peremptory challenge"), *with* Ariz. R. Crim. P. 18.5(d) (court "shall permit that party a reasonable time to conduct a further oral examination of the prospective jurors" and "may impose reasonable limitations with respect to questions allowed during a party's examination of the prospective jurors, giving due regard to the purpose of such examination"), (e) (examination "limited to inquiries directed to bases for challenge for cause or to information to enable the parties to exercise intelligently their peremptory challenges").

ployee and a manager, and whether or not their testimony is reasonable under the circumstances and upon the evidence the jury is going to hear, I believe it's very important to know which jurors have worked in that environment of a grocery store. . . .

And I'm not going into this to each individual person. I'm trying to get answers and the jurors saying yes, and then I'll move past that. And I'm entitled to do that.

The Court: Well, . . . you're not going to be able to evaluate until somebody views the witness and until that witness takes the stand. So, really, I think you're getting too specific here. You're going to find people that are candid and people who are less than candid. Ultimately, the jury is going to use their collective common sense in deciding what's credible or not, so I'm going to ask you to move on.

. . . .

[Zuluaga's counsel]: To clarify the Court's ruling, the Court is preventing me [from] finishing this line of questions with the panel in respect to which members of the panel have worked in grocery stores or can remember—

The Court: Right. You can ask them, is there anything about their experience or experiences of a family [member] or friend that might [a]ffect [their] ability to fairly weigh the credibility of the witnesses in this case, whether they worked in a grocery store or not. So that's really the question here.

So get on with it.

■ ¶ 6 In turn, Zuluaga's counsel asked the following question:

With respect to those of you who have had experience yourself in a grocery store or a close friend or family member, is

there anything about those associations in your life or those people in your life, anything about conversations with them or knowledge about their jobs that would make it more likely, in this case, for you to start off favoring the grocery store or its employees in terms of credibility?

No jurors responded to the question. Of the five jurors who initially stated they, or someone close to them, had some experience working at a grocery store, two ultimately sat for trial, including the fifth juror who never disclosed the nature of that experience.[2]

¶ 7 Rule 47(b)(3), Ariz. R. Civ. P., provides that, "[u]pon the request of any party, the court shall permit that party a reasonable time to conduct a further oral examination of the prospective jurors."[3] Although the court "may impose reasonable limitations with respect to questions allowed," *id.*, it cannot restrict questions "to the grounds of challenge for cause," Ariz. R. Civ. P. 47(d). Instead, voir dire "may extend to any legitimate inquiry which might disclose a basis for exercise of a peremptory challenge." *Id.*; *see* A.R.S. § 21–211 (listing grounds for challenge for cause); Ariz. R. Civ. P. 47(c) (same); *Evans v. Mason*, 82 Ariz. 40, 46, 308 P.2d 245, 249 (1957). For parties to "intelligently exercise these rights of challenge, they are privileged to examine prospective jurors as to their qualifications." *Wilson v. Wiggins*, 54 Ariz. 240, 241–42, 94 P.2d 870, 871 (1939); *see also State v. McMurtrey*, 136 Ariz. 93, 99, 664 P.2d 637, 643 (1983).

■ ¶ 8 In denying Zuluaga's motion for a new trial on this issue, the trial court explained that it had intended to "instruct [Zuluaga] to ask specific questions to determine who on the panel could not be fair." But as explained above, voir dire is not limited to

---

**2.** Bashas' argues Zuluaga "abandon[ed]" this issue by failing to "request further questioning" and by passing the panel at the end of voir dire. Generally, parties are not permitted to raise a post-hoc challenge based on juror bias if they failed to thoroughly question the jurors during voir dire. *See Brooks v. Zahn*, 170 Ariz. 545, 550, 826 P.2d 1171, 1176 (App. 1991). But "an objection made during voir dire is sufficient to preserve [a challenge to the scope of voir dire], and the error is not waived simply by agreeing to

pass the panel." *State v. Shone*, 190 Ariz. 113, 116, 945 P.2d 834, 837 (App. 1997). Therefore, Zuluaga properly preserved the issue here.

**3.** The Arizona Rules of Civil Procedure were revised effective January 1, 2017. *See* Ariz. Sup. Ct. Order No. R–16–0010 (Sept. 2, 2016). We cite the version of the rules in effect at the time of trial.

grounds of challenges for cause, such as "bias for or against" a party. Ariz. R. Civ. P. 47(c)(5), (d). And although the court may have intended to encourage more specific questions, it explicitly told Zuluaga's counsel to ask whether the jurors' experiences would affect their "ability to fairly weigh the credibility of the witnesses" and "to move on." But merely asking jurors whether they subjectively believe they can be fair and impartial is not sufficient for counsel to make an informed decision about making a peremptory strike. *See State v. Naranjo*, 234 Ariz. 233, ¶ 17, 321 P.3d 398, 405 (2014); *see also Silverthorne v. United States*, 400 F.2d 627, 639 (9th Cir. 1968) (bias "should not be adjudged on that juror's own assessment of self-righteousness without something more"). Because Zuluaga's line of questioning was relevant to the factual issues in dispute, *see Evans*, 82 Ariz. at 46, 308 P.2d at 249, the court abused its discretion by limiting the scope of voir dire, *see Burns*, 237 Ariz. 1, ¶ 19, 344 P.3d at 314.

■■■■ ¶ 9 We nonetheless will not reverse the judgment unless the error was prejudicial. *See United Cal. Bank*, 140 Ariz. at 295, 681 P.2d at 447. "The test is whether prejudice seems affirmatively probable[,] and prejudice will not be presumed, but must appear probable from the record." *Catchings v. City of Glendale*, 154 Ariz. 420, 422–23, 743 P.2d 400, 402–03 (App. 1987), *quoting Hallmark v. Allied Prods. Corp.*, 132 Ariz. 434, 441, 646 P.2d 319, 326 (App. 1982). In other words, Zuluaga must show "not only that the voir dire examination was inadequate, but also that, as a result of the inadequate questioning, the jury selected was not fair, unbiased, and impartial." *Naranjo*, 234 Ariz. 233, ¶ 24, 321 P.3d at 406, *quoting State v. Moody*, 208 Ariz. 424, ¶ 95, 94 P.3d 1119, 1146 (2004).

¶ 10 Zuluaga did not attempt to meet this burden. She seems to argue, however, that we should presume prejudice in this case because of the gravity of the trial court's error.[4] We acknowledge that other jurisdic-

tions will presume prejudice when "the trial judge so limits the scope of voir dire that the procedure used for testing does not create any reasonable assurances that prejudice would be discovered if present." *United States v. Baldwin*, 607 F.2d 1295, 1298 (9th Cir. 1979); *see also Fietzer v. Ford Motor Co.*, 622 F.2d 281, 286 (7th Cir. 1980). This approach has been utilized where "the specific circumstances suggest a significant risk of prejudice and if examination or admonition of jurors fails to negate that inference." *United States v. Gillis*, 942 F.2d 707, 709–10 (10th Cir. 1991); *see, e.g., Babcock v. Nw. Mem'l Hosp.*, 767 S.W.2d 705, 709 (Tex. 1989) (voir dire regarding "lawsuit crisis").

¶ 11 But we have found no authority suggesting Arizona has applied this rule, either in the civil or criminal context. *See State v. Detrich*, 188 Ariz. 57, 65, 932 P.2d 1328, 1336 (1997) ("[S]peculation is insufficient to meet defendant's burden of proving that he was not provided a fair and impartial jury."); *cf. Richtmyre v. State*, 175 Ariz. 489, 490–91, 858 P.2d 322, 323–24 (App. 1993) (motion for new trial based on juror bias requires affidavit from juror); *Catchings*, 154 Ariz. at 422, 743 P.2d at 402 ("party must show that a correct response would have resulted in a valid challenge for cause"). And Zuluaga does not assert that there were special circumstances surrounding the factual issues in this case to cause a specific concern regarding juror bias. *See Gillis*, 942 F.2d at 709–10. Accordingly, we cannot say that the trial court committed reversible error by limiting the scope of voir dire. *See United Cal. Bank*, 140 Ariz. at 295, 681 P.2d at 447.

### Curative Instruction

■■■■ ¶ 12 Zuluaga argues the trial court erred when it determined that a curative instruction was warranted to address her counsel's reference, during opening statement, to the manner and timing of Bashas' production of an incident report written

---

4. Zuluaga also asserts that in *Evans* our supreme court reversed a judgment because "[t]he line of interrogation objected to might well have produced answers that would have induced counsel to exercise his rights of peremptory challenge." 82 Ariz. at 46, 308 P.2d at 249. But Zuluaga

misconstrues the procedural posture of that case. In *Evans*, the trial court permitted the line of questioning, and our supreme court affirmed the lower court's ruling when challenged on appeal. *Id.*

shortly after the accident. She also argues the instruction given to the jury was "misleading." Because the court "is invested with great discretion in the conduct and control of [a] trial," we review its decision to use a curative instruction for an abuse of discretion. *Higgins v. Ariz. Sav. & Loan Ass'n*, 90 Ariz. 55, 69, 365 P.2d 476, 486 (1961); *see Miller v. Palmer*, 143 Ariz. 84, 88, 691 P.2d 1112, 1116 (App. 1984).

¶ 13 The issue presented here arose from a discovery dispute. In September 2012, in response to Zuluaga's discovery requests, Bashas' asserted it had no "written or recorded statements" from the incident, and, although an "in-house incident report submitted to Bashas' Risk Management Department" existed, the report was "privileged." Zuluaga requested the legal and factual basis for the privilege the following month and, in January 2013, filed a motion to compel disclosure of the incident report. Bashas' filed a response to the motion, and the court scheduled oral argument for March 2013.

¶ 14 Meanwhile, in February, Zuluaga deposed Bashas' employee, Martinez, as well as the manager on duty during the incident, Antonio Guerra. Martinez and Guerra both asserted that Zuluaga had run or walked into Martinez in the produce department, causing the accident. Guerra had not witnessed the incident, however, and he stated he did not recall ever speaking to Martinez about it. Instead, Guerra testified that he spoke to Zuluaga's father and mother and that he generated the in-house report afterwards using the information provided by the parents.

¶ 15 After the initial depositions, and following oral argument on Zuluaga's motion to compel, the trial court ordered Bashas' to provide it with a copy of the incident report for an *in camera* inspection. In a subsequent order, the court noted that the report contained a statement by Martinez about the incident and that it was "unclear to the Court that th[e statement] should be protected by the work product privilege." Before further oral argument on the issue, Bashas' disclosed the entire document. In the report, Guerra wrote that Martinez had "called him to the floor area to explain what happened." He also stated in the report that Martinez "was

walking quickly to look for an item for a customer and walked into the young girl and she fell backwards to the floor." When Zuluaga deposed Guerra again after the disclosure, Guerra acknowledged that the report contradicted his earlier statements.

¶ 16 During opening statements, Zuluaga's counsel highlighted the contradictory statements and the manner in which the incident report was produced:

> [A]fter they gave these under oath statements, something really important happened in this case. And what you're going to hear is that after they gave these under oath statements, *an incident report surfaced.* And the incident report that was filled out the night that this happened is a very important piece of evidence that you're going to be shown in this case.
>
> And we will ask you to compare what's in the incident report that the Food City manager ... filled out the night that this happened versus what they're going to tell you here in court.

(Emphasis added.) Bashas' did not object to this statement.

¶ 17 On the third day of trial, Zuluaga read the transcript of Guerra's first deposition to the jury. Before she read the second deposition transcript, however, Bashas' counsel raised the following objection:

> [M]y concern is that the jury has already been led through opening comments and opening statement to believe that [the report] suddenly surfaced, as if to say that it was withheld or perhaps lost or they're being left to speculate as to why it's not been produced. . . . But the delay related to mostly practice communication. . . .
>
> . . . [W]e've been overruled on [whether it was privileged], obviously it's been produced and ... admitted ..., and the jurors will be led to believe that it was withheld, perhaps, wrongfully.

Bashas' then requested an instruction to explain that "the basis for the delay had nothing to do with some wrongful actions by Bashas." The court ordered the parties to confer regarding a possible curative instruction, explaining that "when you say the report surfaced, it does make it sound as

though it was lost or, worse yet, that it was withheld." The court gave the following instruction at the close of Zuluaga's case-in-chief on the fifth day of trial:[5]

> Ladies and gentlemen, at this time I'm going to give you one special instruction. . . .
>
> Members of the Jury, we have received in evidence a copy of the [incident] report. In the opening statement reference was made to the timing of the production of this report. And that it was important since the report surfaced after . . . Guerra had been deposed once, but before he was deposed a second time.
>
> You are instructed that the timing of the production of the . . . report was the result of a ruling of the Court. You are not to draw any negative inference with respect to any party, as a result of the timing of the production of the . . . report.

 ¶ 18 Opening statements "give [the jurors] a general picture of the facts and the situations, so that they will be able to understand the evidence." *State v. Burruell*, 98 Ariz. 37, 40, 401 P.2d 733, 735–36 (1965), *quoting State v. Erwin*, 101 Utah 365, 120 P.2d 285, 313 (1941). To that end, parties have "considerable latitude" in crafting their opening. *Id.*, *quoting Erwin*, 120 P.2d at 313; *see* Ariz. R. Civ. P. 39(b). Of course, the trial court also has "discretion in controlling the conduct of a trial." *Rancho Pescado, Inc. v. Nw. Mut. Life Ins. Co.*, 140 Ariz. 174, 188, 680 P.2d 1235, 1249 (App. 1984). And if misconduct occurs during opening statements, the court may sustain an objection, "admonish the jury to disregard improper remarks by counsel," *Higgins*, 90 Ariz. at 69, 365 P.2d at 486, or, if appropriate, order a mistrial,

*Porterie v. Peters*, 111 Ariz. 452, 458, 532 P.2d 514, 520 (1975). If the court elects to give a curative instruction, however, it must not "express[ ] 'an opinion as to what the evidence proves,' in a way that interferes 'with the jury's independent evaluation of that evidence.' " *State v. Dann*, 205 Ariz. 557, ¶¶ 49–51, 74 P.3d 231, 245 (2003), *quoting State v. Rodriguez*, 192 Ariz. 58, ¶ 29, 961 P.2d 1006, 1011 (1998); *see* Ariz. Const. art. VI, § 27.

 ¶ 19 In denying Zuluaga's motion for a new trial on this issue, the trial court explained that it "was concerned that the use of the term 'surfaced' . . . unfairly implied that [the report] had been lost or concealed by [Bashas']." The record below and on appeal supports the court's concern. When Bashas' first raised the issue during trial, Zuluaga responded that the timing of the report was "very important . . . because the report contradicts many things that [Guerra] just testified to." But Zuluaga further stated that "we don't intend to [insinuate or argue] that there was misconduct with respect to the timing of the disclosure." However, in the motion for a new trial and in her opening brief on appeal, Zuluaga took a far different position.[6] In the motion for a new trial, she argued Bashas' was "wrongfully withholding Martinez's statement" and its claim of work product was "disingenuous." And in her opening brief, Zuluaga argues she "would have been entitled to use much stronger language to describe the late disclosure of the [incident] report." She maintains Bashas' "concealed" the report and "engaged in a long course of deceptive conduct when it repeatedly misrepresented in disclosure and discovery that it did not possess an incident report or witness statements."[7]

---

5. The trial court's denial of Zuluaga's motion for a new trial incorrectly states the instruction was given "to the jury as part of the final instructions."

6. Bashas' asserts incorrectly that this new argument was first raised in Zuluaga's opening brief. In any event, we generally will not consider an argument raised for the first time in a motion for a new trial, *Conant v. Whitney*, 190 Ariz. 290, 293, 947 P.2d 864, 867 (App. 1997), or on appeal, *Trantor v. Fredrikson*, 179 Ariz. 299, 300, 878 P.2d 657, 658 (1994), because the trial court and opposing counsel were not afforded an op-

portunity to address them below. *But see Parra v. Cont'l Tire N. Am., Inc.*, 222 Ariz. 212, n.2, 213 P.3d 361, 363 n.2 (App. 2009) (considering new arguments in motion for new trial because plaintiffs appealed from denial of new trial motion).

7. We refer to Zuluaga's arguments only because they appear to validate the trial court's concern that Zuluaga had used the term "surfaced" to "unfairly impl[y]" that Bashas' wrongfully withheld the incident report. But as Bashas' points out, Zuluaga never sought, much less obtained, a court order sanctioning Bashas' concerning the

**212**

¶ 20 But even though Zuluaga did not express this position during trial, the court interpreted counsel's use of the term "surfaced" consistent with that position, and it apparently determined the jury could have as well. The court "had the unique opportunity to hear the [opening statement], observe its effect on the jury, and determine through [its] observations that the trial had been unfairly compromised." *Cal X–Tra v. W.V.S.V. Holdings, L.L.C.*, 229 Ariz. 377, ¶ 92, 276 P.3d 11, 39 (App. 2012). As this court pointed out in *Cal X–Tra*, "in contrast, we have only a cold record, which does not convey voice emphasis or inflection, or allow us to observe the jury and its reactions." *Id.* We therefore cannot say the trial court abused its discretion by giving the curative instruction to address its concern that Zuluaga's "use of the term 'surfaced' with respect to the report unfairly implied that it had been lost or concealed by [Bashas']." *See Higgins*, 90 Ariz. at 69, 365 P.2d at 486.

¶ 21 Zuluaga also argues the curative instruction violated Arizona's constitutional prohibition against judges commenting on the evidence. Our constitution directs that "[j]udges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Ariz. Const. art. VI, § 27. It is the jury's burden alone to weigh the credibility of witnesses and draw inferences from the evidence presented at trial. *See Estate of Reinen v. N. Ariz. Orthopedics, Ltd.*, 198 Ariz. 283, ¶ 12, 9 P.3d 314, 318 (2000); *Dietz v. Waller*, 141 Ariz. 107, 111, 685 P.2d 744, 748 (1984). Zuluaga maintains the trial court essentially instructed the jury not to consider the basis and significance of Guerra's contradictory statements, which "were a result of the timing of the production of the [incident] report." We disagree.

¶ 22 "To violate Arizona's constitutional prohibition against commenting on the evidence, the court must express an opinion as to what the evidence proves" or "interfere with the jury's independent evaluation of that evidence." *State v. Rodriguez*, 192 Ariz. 58, ¶ 29, 961 P.2d 1006, 1011 (1998). Here, the trial court did neither. Zuluaga asserts cor-

rectly that she was entitled to inform the jury that Guerra had given two contradictory statements about the incident—one under oath at his deposition and the other in the incident report prepared within days of the accident. But, as the court implicitly concluded, Zuluaga was not entitled to imply unfairly that Bashas' had concealed the existence of the report. As we stated above, the curative instruction addressed what the court perceived as Zuluaga's improper characterization of how the report ultimately was produced. The instruction did not express an opinion about Guerra's contradictory statements or interfere with the jury's ability to evaluate that evidence independently. *See id.*

### Disposition

¶ 23 For the foregoing reasons, we affirm the judgment in favor of Bashas'.

production of the report. We therefore do not otherwise address the merits of the arguments.