NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

DIAZTECA COMPANY,
*Plaintiff/Appellee*,

*v.*

PALENQUE FOODS INTERNATIONAL LLC,
*Defendant/Appellant*.

No. 1 CA-CV 17-0156
FILED 5-3-2018

Appeal from the Superior Court in Pima County
No. C20163070
The Honorable Leslie Miller, Judge

**AFFIRMED**

COUNSEL

Rusing, Lopez & Lizardi, PLLC, Tucson
By Mark D. Lammers, Patricia V. Waterkotte
*Counsel for Plaintiff/Appellee*

Burris & MacOmber, PLLC, Tucson
By D. Rob Burris, Karl E. MacOmber, Jennifer Maldonado
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Diane M. Johnsen delivered the decision of the Court, in which Judge Kent E. Cattani and Judge Jennifer M. Perkins joined.

---

**J O H N S E N**, Judge:

¶1 Palenque Foods International, LLC appeals the superior court's grant of a preliminary injunction against it in favor of Diazteca Company. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Palenque and Diazteca are businesses that import and distribute fresh food. On July 1, 2016, Diazteca filed a complaint and petition seeking a preliminary injunction and other relief against Palenque and three former Diazteca employees, Manuel Higuera Aguirre ("Higuera"), Jose Echeagaray Armenta ("Echeagaray"), and Ada Suheid Peraza Rubio ("Rubio") (collectively "the Employees"). Diazteca alleged in its verified complaint that the Employees had violated non-compete agreements in working for Palenque. According to Diazteca, Higuera, while still working at Diazteca, co-founded Palenque to take advantage of his access to Diazteca's confidential business information and successfully recruited Echeagaray, then employed by Diazteca, to work at Palenque. According to the complaint, around the time Higuera left Diazteca in June 2016, he and Echeagaray successfully recruited Rubio, also a Diazteca employee, to join Palenque. The Employees then allegedly used Diazteca's confidential information and contacts to solicit Diazteca's customers and suppliers for Palenque.

¶3 On August 18, 2016, before any of the defendants appeared in the case, the superior court issued an ex parte temporary restraining order against Palenque and the Employees and set a preliminary injunction hearing for August 30.

¶4 Palenque appeared through counsel at the preliminary injunction hearing. At the outset, Palenque's counsel stated that he'd "only been in this case a couple of days," but when the court suggested a continuance, he declined, saying his client was ready to go forward. The hearing proceeded, and Diazteca called its vice president and marketing

2

director to testify and offered several exhibits, including employment agreements signed by each of the Employees. Palenque presented no witnesses or evidence. After the close of evidence, Palenque argued that (1) Diazteca was not the proper plaintiff because the Employees had worked not for Diazteca but for a related Mexican company; (2) the court was an improper forum under the doctrine of *forum non conveniens* because the Employees lived and worked in Mexico; (3) the employment agreements were unenforceable because the Employees were not Diazteca employees; and (4) Diazteca's customer lists and pricing information were not protectable trade secrets. Two weeks after the hearing, Palenque filed a memorandum opposing Diazteca's request for preliminary injunction, supported by a declaration from one of Palenque's owners, Raul Arcos Dominguez ("Arcos Declaration"), stating that the Employees worked for a Mexican company owned by Palenque's owners and had never been employees of Palenque.

**¶5** The court granted Diazteca's motion to strike Palenque's memorandum and declaration as untimely, noting that Palenque had stated it was prepared to proceed at the hearing and did not request a continuance or opportunity to submit written briefing. The court then granted the injunction. It found, among other things, that the Employees had been employees of Diazteca; Higuera, along with others, had created Palenque; Palenque knew of the Employees' employment agreements; and Palenque was using Diazteca's confidential information to unfairly compete with Diazteca. The injunction required Palenque to return any of Diazteca's documents or confidential information in its possession or control and prohibited Palenque from, *inter alia*, (1) soliciting current Diazteca employees through the individual defendants; (2) "contacting or soliciting" Diazteca suppliers, clients (or certain prospective clients) for the purpose of doing business with them, (3) "directing or accepting business" from any Diazteca clients (or certain prospective clients) whom the Employees served while working there, or (4) revealing or disclosing Diazteca's confidential information, including client lists, records, software, formulas, competitive pricing information and marketing strategies.

**¶6** Palenque moved for new trial, arguing the Arcos Declaration was "not available based on the notice available to" Palenque and its counsel at the time of the hearing. *See* Ariz. R. Civ. P. 59(a)(1)(D).[1] Palenque also argued the preliminary injunction was not supported by the evidence because Diazteca did not establish any protectable trade secrets. *See* Ariz.

---

[1] Absent material revision after the relevant date, we cite the current version of a statute or rule.

R. Civ. P. 59(a)(1)(H). Palenque resubmitted the Arcos Declaration with its motion for new trial, and attached an excerpt from an industry publication known as the "Blue Book" to its reply in support of the motion.

¶7        After hearing oral argument, the court denied the motion for new trial, reasoning that Palenque had chosen to go forward without offering evidence at the preliminary injunction hearing and that, because Palenque had offered its evidence too late to be considered in opposition to the preliminary injunction, it would have to wait for trial to submit it. But the court granted Palenque's request to modify the preliminary injunction so that it would apply to prospective clients or suppliers only if the Employees had worked to develop a business plan for the client or supplier while at Diazteca. The court further stated that nothing in the modification order precluded Palenque from "pursuing business with clients or suppliers that were not developed" by the Employees while employed by Diazteca.

¶8        Palenque timely appealed the preliminary injunction and denial of its motion for new trial. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2018) and -2101(A)(5)(a), (b) (2018).

## DISCUSSION

### A.        Preliminary Injunction.

¶9        A company seeking preliminary injunctive relief must establish (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm not remediable by damages in the absence of preliminary relief; (3) the balance of hardship favors it; and (4) an injunction is in the public interest. *Shoen v. Shoen*, 167 Ariz. 58, 63 (App. 1990). "To meet this burden, the moving party may establish either 1) probable success on the merits and the possibility of irreparable injury; or 2) the presence of serious questions and the balance of hardships tip sharply in his favor." *Id.* (quotation omitted).

¶10        We review a grant of a preliminary injunction for abuse of discretion. *McCarthy W. Constructors, Inc. v. Phoenix Resort Corp.*, 169 Ariz. 520, 523 (App. 1991). A court abuses its discretion if it applies the incorrect preliminary injunction standard, applies the incorrect substantive law to the underlying issues or bases its decision on a clearly erroneous and material finding of fact. *See id.* (citing *Zepeda v. United States Immigration & Naturalization Serv.*, 753 F.2d 719, 724 (9th Cir. 1983)).

### 1. The Employees' employment by Diazteca and Palenque.

¶11  Palenque contends the superior court erred by finding that Diazteca employed the Employees. Palenque cites language in the employment agreements stating that "this agreement does not create a contract of employment, express or implied, between employee and Diazteca." According to Palenque, this demonstrates the absence of an employee-employer relationship, meaning the agreements were not supported by consideration and are unenforceable.

¶12  The written agreements, however, show that Diazteca employed the Employees. Each of the Employees signed a copy of the agreement, which is entitled "Employment, Nonsolicitation & Confidentiality Agreement" and refers to the signing party as "Employee" throughout. Each agreement states that "Employee is employed in a position at Diazteca." The language Palenque quotes to support its contention that no employee-employer relationship existed is within a paragraph that goes on to state that the "employee hereby acknowledges that her employment is 'at-will,' which means the company or the employee may terminate the employment relationship, at any time." The referenced language does not prove that the Employees did not work for Diazteca, only that they were at-will employees of the company.

¶13  Palenque next argues that the superior court erred in finding that the Employees worked for Palenque. But the court had before it a record from the United States Department of Agriculture showing that Higuera had signed as a principal of Palenque while still working at Diazteca. This evidence would adequately support the injunction against Palenque on this issue even absent findings as to the other employees. And as to the other employees, Diazteca's vice president and marketing director, Rod Diaz, testified without objection, that he had learned Echeagaray and Rubio also worked for Palenque. Moreover, under the preliminary injunction standard applied by the court, Diazteca needed only to present evidence showing it was likely to prevail on the merits. *See Shoen*, 167 Ariz. at 63.

### 2. *In rem* jurisdiction.

¶14  Palenque argues the superior court lacked *in rem* jurisdiction over the business cards or other confidential materials the court ordered returned because they are property of a Mexican company in Mexico. The basis of the superior court's order to return documents and confidential information in Palenque's control, however, was its personal jurisdiction

over Palenque, which Palenque does not dispute. *See State v. W. Union Fin. Servs., Inc.*, 220 Ariz. 567, 574, ¶ 33 (2009) ("If those with interests in the property are subject to in personam jurisdiction in the forum state, a court in that state undoubtedly has jurisdiction consistent with the Due Process Clause to enter orders relating to the property.").

###### 3.     Trade secrets.

**¶15**         Palenque next argues that Diazteca's customer lists are not protectable trade secrets because its customers were widely known in the industry. This argument presupposes that a company cannot contract to protect confidential information that is not a trade secret – a questionable assumption that the parties do not address. *See* A.R.S. § 44-407(B)(1) (Arizona's Uniform Trade Secrets Act "does not affect . . . [c]ontractual remedies, whether or not based on misappropriation of a trade secret"); *Calisi v. Unified Fin. Servs., LLC*, 232 Ariz. 103, 109, ¶ 26 (App. 2013) ("Although there may be substantial overlap between confidential information and trade secrets, they are not synonymous."). Regardless, Diazteca presented sufficient evidence of protectable trade secrets to support the injunction.

**¶16**         Generally, a former employee's use of basic customer information is lawful when the customer does business with multiple sources and the customer information is known to the competition. *Amex Distrib. Co. v. Mascari*, 150 Ariz. 510, 517 (App. 1986). But "a particular use of specific customer information may constitute a violation of a former employer's protectable interest." *Id*. "A customer list may be entitled to trade secret protection when it represents a selective accumulation of detailed, valuable information about customers – such as their particular needs, preferences, or characteristics – that naturally 'would not occur to persons in the trade or business.'" *Calisi*, 232 Ariz. at 106, ¶ 16 (quoting *Enter. Leasing Co. of Phoenix v. Ehmke*, 197 Ariz. 144, 149, ¶¶ 15-16 (App. 1999)). Customer lists also may be protectable trade secrets when a business "compiled the list by expending substantial efforts to identify and cultivate its customer base such that it would be difficult for a competitor to acquire or duplicate the same information." *Id.* at 107, ¶ 17. Courts also consider whether a customer list gives its owner "a demonstrable competitive advantage over others in the industry" and whether a business has divulged its customer list only to employees or has shared it with outsiders. *Id.* at ¶ 18-19.

**¶17**         Diaz testified that Diazteca maintains non-public customer information, including the commodities, sizes and varieties that a customer

purchases and the direct phone number of the particular contact at a business – information not found in the industry "Blue Book." According to Diaz, the Employees all had access to that confidential information, which was kept on business cards. After the Employees left, more than a dozen confused customers telephoned Diaz to report that Higuera and Rubio were contacting them representing Palenque, not Diazteca, and Diazteca found that the business cards were gone. From Diaz's testimony, the court reasonably could have found a strong likelihood that Diazteca's customer information took sufficient effort to compile or was of a kind that would be entitled to protection, and Palenque had obtained that information and was using it.

**¶18**　　　　Palenque also argues that Diazteca's pricing information is not a protectable trade secret because, according to Palenque, Diazteca acknowledged at the preliminary injunction hearing that pricing information varied from week to week. But Diaz also testified that his company determined pricing based on a confidential formula. Pricing information may have particular value when coupled with a confidential customer list. *See Calisi*, 232 Ariz. at 106-07, ¶ 16 (citing, *inter alia*, *Allen v. Johar, Inc.*, 823 S.W.2d 824, 827 (Ark. 1992), and *Morlife, Inc. v. Perry*, 66 Cal.Rptr.2d 731, 735 (App. 1997) (customer lists containing pricing information were trade secrets)). Accordingly, the court did not abuse its discretion in concluding that Diazteca's "formulas" or "competitive pricing" information may be protected by a preliminary injunction.

### 4.　　　　Reasonableness of the injunction.

**¶19**　　　　Palenque argues that the preliminary injunction is overbroad because it orders Palenque to return materials without evidence that Palenque possesses the materials. But Diazteca did present circumstantial evidence that Palenque possessed the materials, including the coincidence in timing between Higuera's departure, the disappearance of the business cards, and the reports from customers that Palenque was contacting them. Moreover, the preliminary injunction merely requires Palenque to return Diazteca's confidential materials "in its possession or control"; Palenque is not required to return materials it does not possess or control.

**¶20**　　　　Palenque also argues that even after the court amended the preliminary injunction to extend only to contacts with prospective clients for which the Employees had developed a "business plan" while at Diazteca, the injunction remains overbroad because it "is impossible for Palenque to know which clients may be covered by any Diazteca 'business plan' 'developed' by the individual defendants," because the plans are

"secret." But as the court made clear to Palenque, it can simply ask the Employees to identify the clients or prospective clients for which they developed business plans while working at Diazteca. Further, by limiting the scope of the injunction to prospective customers for which Diazteca had developed business plans, the injunction protects Diazteca's legitimate interest in the time and effort spent in developing those plans.

**¶21** Likewise, we cannot agree with Palenque's contention that the preliminary injunction is overbroad because it prohibits Palenque from merely accepting business from certain clients. To the extent that the preliminary injunction prohibits Palenque from accepting business from certain companies the Employees "served" while at Diazteca, it is not unreasonable given Diazteca's strong business interest in "prevent[ing] former employees from using information learned during their employment to divert or to 'steal' customers." *Olliver/Pilcher Ins., Inc. v. Daniels*, 148 Ariz. 530, 531 (1986) (citing with approval *James S. Kemper & Co. v. Cox & Assocs.*, 434 So.2d 1380, 1384 (Ala. 1983) (upholding injunction prohibiting former employee from accepting business from certain of employer's clients; restriction was reasonable because it only applied to a "narrow, identifiable group of clients and potential clients, where [the employer] ha[d] a work product investment in those clients with which [the former employee] was involved.")); *Mascari*, 150 Ariz. at 517-18 (recognizing "protectable interest [in] those customers to whom the employee represented the employer's goodwill").

**B.    Motion for New Trial.**

**¶22** Palenque argues the superior court erred in denying its motion for new trial. Palenque contends that the Arcos Declaration attached to the motion showed that neither Palenque nor Diazteca are the proper parties in the lawsuit. The motion also attached excerpts from the "Blue Book," which Palenque contends showed that the client information at issue is not a protectable trade secret. Palenque contends the superior court erred in denying its motion because the motion was based on evidence it was unable to produce at the preliminary injunction hearing due to insufficient notice of the hearing.

**¶23** We review the superior court's denial of a motion for new trial for abuse of discretion. *Esplendido Apartments v. Metro. Condo. Ass'n of Ariz. II*, 161 Ariz. 325, 329-30 (1989). "[W]e generally will not consider an argument raised for the first time in a motion for a new trial." *Zuluaga v. Bashas', Inc.*, 242 Ariz. 205, 211, ¶ 19, n.6 (App. 2017).

¶24 A court may grant a new trial based on one of the grounds in Rule 59(a), including "newly discovered material evidence that could not have been discovered and produced at the trial with reasonable diligence." Rule 59(a)(1)(D). The hearing transcript shows, however, that Palenque essentially disclaimed reliance on so-called newly discovered evidence; in any event, Palenque never explained why it could not have called Arcos to testify or offered the "Blue Book" excerpts in evidence at the injunction hearing.

¶25 Further, even if the short notice of the hearing might have impaired Palenque's ability to produce evidence, it cannot support the motion for a new trial under Rule 59(a)(1)(D) because Palenque elected to go forward with the hearing after the court invited it to ask for a continuance if it was not ready. Nothing in Rule 59(a) allows a party to decide to proceed without evidence and then obtain a do-over when the outcome does not turn out as hoped. *See Allied Van Lines v. Parsons*, 80 Ariz. 88, 98 (1956) ("Belated objections which might have been met if timely made during the trial may not be raised for the first time in a motion for new trial.").

¶26 Palenque also argues the superior court should have granted it a new trial because the preliminary injunction is not justified by the evidence or law. *See* Ariz. R. Civ. P. 59(a)(1)(H) (court may grant new trial if the "decision, findings of fact, or judgment is not supported by the evidence or is contrary to law"). For the reasons set forth above, however, under the applicable law, adequate evidence supported the injunction.

**CONCLUSION**

¶27 We affirm the preliminary injunction.

